UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARNOLD CHAPMAN, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 5555 |
| v. | ) ) | Judge Sara L. Ellis |
| FIRST INDEX, INC., | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Arnold Chapman, on behalf of himself and all others similarly situated, filed this lawsuit against First Index, Inc. ("First Index"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and a common law conversion claim. The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 28 U.S.C. § 227(b)(1)(C). An exception exists if the "unsolicited advertisement is from a sender with an established relationship with the recipient," the sender obtained the fax number through the established business relationship or from a directory, advertisement, or website to which the recipient voluntarily agreed to make its fax number available for public distribution, and the advertisement contains an opt-out notice. *Id.* Chapman seeks to certify a class defined as "[a]ll persons who were sent one or more facsimiles from First Index on or after August 7, 2005, promoting the commercial availability of property, goods or services, without their prior express invitation or permission." Pl.'s Mot. for Class Cert. at 1. Because the Court finds that individual issues predominate and that the class is unascertainable, Chapman has failed to meet Rule 23(b)'s requirements and his motion for class certification [151] is denied.

**BACKGROUND**

Until 2010, First Index was a business-to-business marketing company focused on connecting suppliers and buyers of custom-manufactured parts. Among other means of building business, between 1996 through 2008, First Index sent faxes to various contacts to market its services. The faxes were typically of two types: (1) faxes sent to potential suppliers regarding specific requests for parts or (2) faxes regarding First Index events and services it provided more generally. *See* Ex. I to Pl.'s Mem. On February 7, 2006 and November 7, 2006, Chapman received the latter type of fax from First Index, inviting him to attend First Index open houses. Ex. H to Pl.'s Mem.

First Index did not keep track of the faxes it sent out until August 8, 2007, when it hired Global Relay to archive its electronic messages. According to Chapman's expert, Robert Biggerstaff, who examined First Index's and Global Relay's records, between August 8, 2007 and November 5, 2008, First Index attempted to send 608,793 faxes during this time, of which 388,702 attempts were successful.

Although First Index did not keep a comprehensive record of all the faxes it sent from 1996 to 2008, it did maintain a customer contact database from which it pulled the numbers to send faxes. The database included approximately 384,000 contacts. Some of these were active First Index members, while others were merely prospects. The database was populated with information obtained from memberships, trade show attendance, phone books, and purchased lists. First Index's practice was to make contact with all those in its database in order to develop the contacts and seek to obtain paid subscriptions from them for First Index's services. This involved cold calling and, as at issue here, sending faxes. Former First Index employees testified, however, that First Index only sent faxes to those contacts who first provided consent to

receive faxes. According to these employees, consent was primarily obtained verbally, through calls that First Index employees made to the contacts before entering the contacts' fax number into the database. Notes were also made in the database for certain contacts that indicated, for example, that information was requested by fax. The database also allowed First Index employees to mark a checkbox in a contact's listing to signify that the contact did not want to receive further communications, including faxes, from First Index. Additionally, consent was obtained by way of applications for membership, in which members agreed to "receiv[e] findFAST job postings immediately via fax or e-mail." Ex. M to Def.'s Resp.

**LEGAL STANDARD**

A party seeking to certify a class must demonstrate that the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—are met. Fed. R. Civ. P. 23(a). Additionally, the party seeking certification must show that one of the three subsections of Rule 23(b) is met. Fed. R. Civ. P. 23(b); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Here, Chapman seeks certification under Rule 23(b)(3), which requires a finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, although not an explicit requirement of Rule 23, the party seeking certification must demonstrate that the class members are identifiable. *Oshana*, 472 F.3d at 513.

The Court has broad discretion in determining whether a proposed class should be certified. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). The party seeking certification bears the burden of demonstrating that certification is proper. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Court must engage in a "rigorous

3

analysis," resolving material factual disputes where necessary. *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ----, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

## ANALYSIS

First Index argues that class certification is inappropriate because the issue of whether a recipient of the fax consented to its receipt makes the class unascertainable and also defeats predominance. The analysis under the two inquiries is essentially the same. *See Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 108 (N.D. Ill. 2013). "To be ascertainable, a class must be identifiable as a class and membership within it must be determined by application of precise, objective criteria." *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2011 WL 4628744, at *2 (N.D. Ill. Sept. 30, 2011). The predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (alterations in original) (quoting 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). In other words, predominance is met where common evidence may be used to prove the class members' claims. *Id.*

Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance and ascertainability grounds, with the outcome depending on the specific facts of each case. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328 (5th Cir. 2008) ("[T]here are no invariable rules regarding the suitability of a particular case filed under this subsection of the TCPA for class treatment; the unique facts of each case generally will determine whether certification is proper."); *G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011) (declining to certify proposed TCPA class based

4

on issues of individualized consent, distinguishing cases in which courts have certified TCPA cases and noting that "[o]f course, the question whether common questions predominate is necessarily a case-specific one"). Where a defendant has set forth specific evidence demonstrating consent and the plaintiff has presented no method by which consent or lack thereof can be ascertained on a class-wide basis, courts have declined to certify a class. *See, e.g.*, *Gene & Gene*, 541 F.3d at 328–29 (reversing district court's certification of a TCPA class where the defendant presented evidence that some of the faxes it had sent had been solicited, but the determination of which faxes were solicited required a case-by-case determination); *Jamison*, 290 F.R.D. at 107–09 (finding individual issues predominated and that class was unascertainable where defendant introduced evidence that it elicited consent from a large percentage of potential class members so that the court would have "to conduct a series of mini-trials to determine the population of the class and to determine liability"); *Vigus v. S. Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235–36 (N.D. Ill. 2011) (proposed class was not sufficiently ascertainable, as "determining who would be in a class narrowed to an appropriate size could not be done by reference to objective criteria applied class-wide and would be an unmanageable task"); *Brink's Mfg. Co.*, 2011 WL 248511, at *7–8 (individualized issues predominated where the defendant submitted evidence that it obtained consent from all fax recipients and the court would have been required "to engage in a class-member-specific inquiry to determine whether each recipient did indeed give permission or have an established business relationship with Defendant at the pertinent time"). On the other hand, in those cases where the defendant has not proffered specific evidence of consent and instead the issue of consent is merely speculative, courts have certified TCPA classes. *See, e.g.*, *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, at *5 (N.D. Ill. Feb. 11, 2014) ("[T]here is no reason to believe in this case that

including the requirement of lack of consent in the class definition would materially reduce the scope of the class. There is no evidence in the record, nor do the defendants offer any now . . . that any of the alleged recipients of the WEI fax consented to receipt of the fax."); *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 66181, at *3–4 (N.D. Ill. Jan. 4, 2013) (rejecting consent objection to class definition where defendant did not offer specific evidence of consent); *see also Brink's Mfg. Co.*, 2011 WL 248511, at *9–10 (distinguishing cases that certified TCPA classes, noting that the "theme of these cases" was that the "defendant had distributed faxes in such a way that consent was not an issue").

Chapman's proposed class expressly excludes those who provided First Index with "their prior express invitation or permission" to receive a fax. But First Index has submitted uncontroverted evidence that it obtained consent prior to sending faxes to the contacts it had in its database. Its former employees testified that this was their general practice, membership agreements specifically provided for communications by fax, and notes in First Index's database indicate that at least certain contacts requested fax communications. First Index thus argues that the Court would be required to engage in an individualized inquiry to determine not only membership in the class but also the merits of the case. Faced with First Index's evidence regarding consent, Chapman has not responded with any suggested objective criteria by which class membership could be readily ascertained or a common method of proof by which lack of consent could be established on a class-wide basis. Instead, Chapman argues that consent is an affirmative defense for which First Index has the burden of proof and that even if consent existed, First Index violated the TCPA by failing to include a proper opt-out notice. But the need for individualized inquiries with respect to an affirmative defense may still defeat predominance. *See Jamison v. First Credit Servs., Inc.*, No. 12 C 4415, 2013 WL 3872171, at *6 (N.D. Ill. July

29, 2013) ("Individualized issues necessary to decide an affirmative defense may predominate so as to prevent class certification. For purposes of class certification, it is [plaintiff's] burden to prove that they do not." (citations omitted)); *Vigus*, 274 F.R.D. at 237 ("That [the defendant] may carry the burden of proving some of these individual questions as part of an affirmative defense does not render those questions any less predominant in this litigation."). Further, Chapman has not disavowed the limitation in his class definition that makes consent an issue, thus rendering his argument regarding opt-out information irrelevant for purposes of class certification. *Cf. Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, No. 12 C 3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ("Should [plaintiff] wish to press its theory that opt-out notices are required even when a fax is not unsolicited, it must move to amend the complaint and the class definition.").

Without any meaningful response from Chapman and based on the record before it, the Court agrees with First Index that individualized inquiries surrounding consent preclude certification. Chapman has not proposed any generalized way to determine class membership, let alone liability. Instead, like in *Gene & Gene* and *Brink's Manufacturing*, because First Index has submitted specific evidence suggesting that it obtained consent prior to sending the faxes, the Court would be required to engage in case-by-case inquiries to determine whether each fax was transmitted without the prior express invitation or permission of the recipient. *See Gene & Gene*, 541 F.3d at 328–29; *Brink's Mfg. Co.*, 2011 WL 248511, at *8–10. Because the proposed class fails Rule 23's ascertainability and predominance requirements, class certification is denied.[1]

---

[1] In light of the foregoing reasons requiring denial of class certification, the Court need not address the remaining Rule 23 requirements or First Index's remaining arguments regarding why class certification is inappropriate.

## CONCLUSION

For the foregoing reasons, Chapman's motion for class certification [151] is denied.

Dated: March 4, 2014

SARA L. ELLIS
United States District Judge